Thank you, Your Honor. Good morning. May it please the Court. My name is Dale Pearson. I represent the Midwest Operating Engineers Fringe Benefit Funds, the Pension and Health and Welfare Funds, the defendants below, and the appellants here. The question presented today is whether the District Court erred in finding it lacked jurisdiction under ERISA or otherwise to enforce an obligation to make contributions to the funds on behalf of strike replacement workers. The funds believe the Court did err and that it should have fashioned a remedy pursuant to its authority to enforce collective bargaining agreements under Section 301 of the Labor Management Relations Act of 1947. Your Honor, I'd like to highlight three key facts. The first is that in the lower court, it was uncontested by the parties that the Court had jurisdiction under Section 301. But before you get too far with that, I mean, of course, you can't in some sense stipulate to jurisdiction, but what I would like you to clarify is what is the contract you're relying on because the collective bargaining agreement that underlay the contributions had expired and it was being observed under the provisions of the labor laws as it must be until parties reach impasse. But that doesn't mean there was a contract. There was a legal obligation to continue to do certain things, and so I want to know what's the contract that would be the basis for your 301 action. Your Honor, the contract is the collective bargaining agreement. But it had expired. It did expire in 2016, Your Honor, and the company continued to make contributions on behalf of workers who continued to work up until 2018 when the union went on strike, several workers struck, the company ceased paying, hired replacement workers, ceased paying contributions on replacements, et cetera. But where's the, I mean, as I read the advanced lightweight opinion, for example, the Supreme Court draws a distinction between a contract on the one side and a statutory obligation during negotiations after an expired contract to continue observing certain terms and conditions of the old contract. It doesn't, I don't understand that to say that there is a new contract that the National Labor Relations Act has created. That's not our argument, Your Honor. The old contract is what is still applicable in this circumstance. But why? But it had expired. Because the statute, as you alluded to, Your Honor, the NLRB VCAT says that the parties are required to maintain the terms and conditions of employment of the expired agreement. Terms and conditions, right. But I, I don't know, I haven't found a case that allows a district court to enforce an expired collective bargaining agreement in a Section 301 action. In this situation, Your Honor, because Lincoln Mills says that the federal courts are entitled to fashion a body of federal labor law to enforce agreements, that in this gap period, advanced lightweight uses that phrase, from the time the contract expires until the time that impasse is reached, the legal obligation, the statutory obligation is to continue the terms and conditions of the agreement in effect. Absolutely. No, I totally agree with that much, but it seems, it happens a lot that contracts expire and then there's a period of time during which negotiations happen before a new contract is reached. Sometimes there's impasse, but a lot of the time it's just a period of time. And so it seems very odd to me that this situation, that you can't find a case that would show a 301 action based on that interim statutory obligation. I don't think any, Your Honor, the case that I could not find was one in which this particular theory has been advanced that ... And don't you think it would have come up? You have seen it alluded to in a couple of cases. There's a couple of old Northern District of Illinois decisions, Your Honor, that we didn't really unearth until recently getting ready for this argument where the courts alluded to this question. 301 jurisdiction, one of the district court decisions said that there wasn't. The other one said that there was jurisdiction because of the existence of a participation agreement as a separate agreement. Right, but there was a separate agreement there. Correct, that's right. And then there's many cases like that. Your Honor, when the, in this gap situation, the federal policy is to maintain these benefits. That's clear. But the replacement workers never had any right to benefit, surely? Not after they were hired, no. But under the cases, Your Honor, that we've dealt with more recently, the Cleveland quarry case that involved both of these parties, all these same parties, and the decision upon which it was based, the Gerber truck case, basically says that the trust funds as a holder in due course don't have to, or the labor law defenses aren't effective against their rights. And so the name of the game in that situation, Your Honor, is if you're doing bargain unit work in this contract, it says if you're getting paid wages for work, then you're entitled to contributions. There's no difference between the replacement workers and the workers who continue to get contributions. That's important. The company continued to pay contributions as it was required to. Well, and as for the workers who had been under the CBA, they had that statutory obligation and they did it. Midwest, sorry, the Cleveland quarry case, though, is one where there is a CBA, but then the union's decertified. It's a somewhat different situation and a different enforcer. Yes, Your Honor. I think the concept, though, the Gerber truck holder in due course concept, though, because the contract here in this impasse gap situation is what dictates the terms and conditions of employment that are required to be continued, that is the document that you can rely on and the court should rely on. In fashioning a 301 jurisprudence to enforce collective bargaining agreements, the court has broad discretion to create law based on the national labor policy. The national labor policy is plain here. The cases are legion that say that you've got to honor the old contract until impasse. But didn't they do that, though, the Riverstone group people, at least vis-a-vis the people who were under the old contract? Yes, Your Honor. The workers who went on strike. When they came back, they got their fringe benefits paid. Yes, Your Honor, that's correct. Before the strike and then after they came back after the strike. Yes, they continued to honor the agreement, which is a key distinction, Your Honor, between our fact that the company declared that impasse had been reached and refused to make contributions. Advanced Lightweight says that the court doesn't have jurisdiction to decide the labor board case, whether there was an impasse. Here, you don't need that. In our case here, you don't need that because we don't need the expertise of the federal agency to weigh in on whether there's an impasse, which is a complicated decision because there was no dispute. It was uncontested between the parties that there was an impasse and we attached the administrative law judge's decision to the appendix to show that the court actually, the board had already found or the ALJ had already found an impasse. We don't have a board decision on that ALJ case yet. Mr. Pearson, do you have, do you, does your client have a remedy before the board? Could it bring an action before the NLRB? Your Honor, I think that the trust funds and or the union could still bring a unfair labor practice charge. We've brought many to this point and we've been largely successful for the last several years. I think the part of the problem is right now, if we brought a ULP charge, it would be limited perhaps by the section 10b six-month limitations period that applies to unfair labor practice charges. So unless we could prove a continuing violation, we're not going to be able to go back to the 2018 to collect the contributions on behalf of the replacement workers. There's also the issue that was discussed at length in Advanced Lightweight that the remedies under ERISA are broader. Now we've got fairly broad remedies under our agreement and under the trust agreement and if you would accept my Your Honor, that the whole concept of impasse depends on a contract. There's a contract still in place because of the notion, the legal obligation to maintain those terms and conditions until impasse. If there's no legal obligation, then there's no agreement. The notion that this contract should apply until impasse is what's been created by the Supreme Court and which is what we're asking this court and the lower courts to apply in order to get us these contributions. If that's an answer, Your Honor, I'll move on. I want to point out as well, in addition to the 301 under Lincoln Mills, the authority of the federal courts to fashion remedies for the enforcement of collective bargaining agreements based on the national labor policy. I believe that, as we argued in the brief, that the Gerber truck in Cleveland Quarry, this notion of the holder in due course, the courts retained jurisdiction under ERISA, that that was an error and because of the ways to distinguish advanced lightweight concrete, that is that there was no impasse there and that the employer refused that the ERISA did confer jurisdiction on the district courts to determine whether the company's obligation to pay contributions continued. I would like to reserve some time, Your Honor, for rebuttal if there's no more questions on the prime. That would be fine, thank you. Thank you, Your Honor. Mr. Eggers. May it please the court, counsel, Art Eggers on behalf of the appellee, the plaintiff, the counter-defendant, Riverstone Group, Inc. In this case, the issue has been stated by the funds in their appeal brief as whether the district court erred in finding it lacked subject matter jurisdiction to require Riverstone to make fringe benefit contributions to the funds on behalf of As this court is well aware, as demonstrated by questions that have been asked, in order for there to be an ERISA remedy, there has to be a contract. It's not enough that there be an expired contract. It's not enough that there be labor law principles that say the expired contract defines the status quo that has to be extended under certain circumstances. It's not enough to get into a discussion about replacement workers and the fact that there is an inherent conflict of interest between the union and the replacement workers such that the employer can establish something different than the dynamic status quo for the replacement workers. None of that matters. The only thing that matters under ERISA, as this court again has demonstrated is well aware, is there has to be a contract. There is no contract. There was a contract. It expired in 2016. It seems to me that their theory is that the obligation to continue respecting the old contract in some sense creates what I'll call a statutory contract. I'm not sure what to call it actually, but something like that, that there is de facto a contract that will support this. I agree with what you just said, Your Honor. I think you're right. And this maybe moves us on to some discussion of Cleveland Quarry because the union seems to be asserting, sorry funds, the funds seem to be asserting that there is some applicability of Cleveland Quarry to this case such that there is an independent right to a contract. Again, as this court is well aware, as demonstrated by the questions that have been asked, there is a fundamental and compelling difference between this case and Cleveland Quarry. In Cleveland Quarry, there was a five-year contract, only barred a de-cert for three years. Union was decertified. Then the question became not, is there a contract? Because there was. It was a five-year contract. The question was, after decertification of the union, who, if anyone, can enforce the contract? As you're well aware, Your Honor, the determination was made, the fund can, either directly or else derivatively as a case. Because in Cleveland Quarry, there was a contract that hadn't reached an expiration date. In this case, there's no contract. Therefore, there is no ERISA claim at all. There can't be. So what's the remedy then? Is it, as Judge Ripple was suggesting, some sort of action before the board? Well, if I were representing the fund, I might tell the fund there is no remedy at this point. They can always file an unfair labor practice charge with the National Relations Board. Whether that will be found to have any merit, whether it will be found to be timely, whether it's found to have merit, what is the remedy? The board will figure that out. But that is the only avenue that is available to the fund, if it's available at all. It is not through the district court. It's not that. So it would be your position that we don't need to reach anything about the status of the replacement workers? The issue is framed before the, yes, if I may, Your Honor, say a bit more about that. The issue is framed by the funds in their appeal brief, is whether the district court erred in finding it lacked subject matter jurisdiction to require Riverstone to make fringe benefit contributions to the funds on behalf of replacement employees, as framed by the funds. Using that as the issue in this case, the only thing the court is called to decide is whether the district court erred in finding it lacks subject matter jurisdiction. It didn't make that finding at all with regard to risk issues. It found it did have jurisdiction. It decided the risk issue. It said there was no contract, so it was resolved. It wasn't any error in exercising discretion with regard to jurisdiction because it did. The only area where the district court did not exercise jurisdiction, the only area is with regard to labor law principles. And in not reaching that issue because it determined not to in its discretion, it relied on advanced lightweight concrete. As, again, I know this court is well aware, bear with me. And in advanced lightweight concrete, the Supreme Court, in examining ERISA remedy to collect delinquent contributions, stated both the text and legislative history of ERISA, 515.502.G2, provide firm support for the conclusion such remedy is promised contributions, in this case no contract, and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make post-contract contributions constitutes a violation of the NLRA. And the issue in this case is the permanent square space. Where there's no contract, yeah. Yeah, sorry for the repetition, Your Honor, but it all leads us back to the same point. And with regard to any issue with regard to is there to be contributions paid, any obligation to do that on behalf of the permanent replacements, we're in the wrong building. We should be in front of the National Labor Relations Board. I would welcome a discussion with the National Labor Relations Board on this very issue as to contributions have to be paid on behalf of permanent replacement workers. I would invite that discussion with the National Labor Relations Board. The Board seems to be thinking about that issue, actually, but it will be debated, I'm sure. May it please the Court, if there are any questions, I'd be happy to try and address them. I see none, so if you would like to conclude, that's fine. Yeah, so I, for the reasons that I've discussed here and the reasons that this Court is well aware of, I would urge this Court to affirm the District Court. Thank you. Thank you. Mr. Pearson. Thank you, Your Honor. I'll be brief. There's a gap in the law, Your Honor. Mr. Counsel Daggers did point out what the District Court said about its analysis under ERISA, but I think it was clear that the Court found concurrent jurisdiction under 301, and that's what we want to rely on primarily in the Lincoln Mills Authority of the federal courts to fashion a body of labor law to enforce collective bargaining agreements. The Court did specifically say that it had no jurisdiction to decide the case under the NLRB, but as we've said, as I said before, there's no conflict here because there's no issue about an impasse. Now, is there a conflict over replacement workers? I think that there is. That's what the focus of the briefing and discovery in the lower court was. It was about the difference between permanent replacements, temporary replacements, and whether there was this obligation to make contributions. I do want to point out, as we said in the briefs, it was apparent at one point that the replacement workers had actually, at least some of them, had voted for the union in the decertification election that was conducted in this case. Since the briefing was completed, the labor board has finished that process and the region has certified Local 150 as being the collective bargaining representative of this bargaining unit again, and it's obvious that several replacement workers voted for the union. This notion that the distinction between contributions or the wages and benefits that a replacement worker is entitled to goes out the window, that they're not entitled to the old contract terms and conditions. But the Court does clearly find that it has no jurisdiction to resolve these things. I'm looking at page 12 of its opinion. Right. No jurisdiction to resolve the board issue, but there's no board issue, we say, because there was no... So no jurisdiction whether there's a statutory duty to pay contributions on behalf of any of its employees after that key date, May 1, 2016, and no jurisdiction or not necessary to address whether the new employee should be classified as permanent replacements. No jurisdiction about contract. Right, and we say that because there is no dispute about whether there was an impasse, there's no dispute about the legal obligation, the statutory obligation to maintain the contributions, then there's no issue for the labor board to decide. There's no risk of a conflict with the board and its administrative expertise. I just want to close, Your Honor, by pointing out that these replacement workers, and there's 15 of them, or a number fluctuated. What's at stake here is the national labor policy that individual people get good health care, that individual workers get retirement benefits when the time comes. These replacements could make claims against the pension fund for pensions based on these hours worked, and the law would say that they're entitled to them, and my client, the pension fund, would probably have to pay them, regardless of the fact that there were no contributions made. That's what Gerber Truck and Cleveland Court say. So we think it is not, there is no inherent conflict because these folks voted for us, and hopefully we can conclude an agreement in the future that will get them benefits, but this gap does still exist, and we think that the law under Section 301 allows the courts to fill that gap and require contributions from this employer. Thank you so much for your time. Glad to be back. All right, thank you. Thanks to both counsel. The court will take this case under advisement.